UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY MASON. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09-CV-1081 CAS |
| ) | |
| SAFECO INSURANCE COMPANY OF ) | |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Jimmy Mason's motion to preclude the testimony of defendant's expert witness Stephen A. Knox. Plaintiff asserts that Mr. Knox's proposed testimony (1) is outside the scope of proper rebuttal testimony, and (2) does not meet the standards for admissibility set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In the alternative, plaintiff seeks leave of Court to supplement his experts' reports to address new arguments presented by Mr. Knox. Defendant Safeco Insurance Company of America ("Safeco" or "defendant") opposes the motion. No party has requested an evidentiary hearing. The parties have submitted an evidentiary record which includes Mr. Knox's expert report and deposition testimony and the deposition testimony and reports of plaintiff's experts Mr. Gallina and Mr. Langelier. Accordingly, the Court finds that it can make a proper Daubert analysis without the need for an evidentiary hearing or oral argument.

**Background**

Plaintiff owns a Sea Ray XM boat ("Sea Ray") which is insured by Safeco. The Sea Ray was involved in a two-boat collision on the Lake of the Ozarks on August 23, 2003. In the collision,

the Sea Ray's hull was punctured and the boat took on approximately eighteen to twenty inches of water in the cabin. Plaintiff reported the accident to his insurance agent two days later. In October 2003, Safeco issued a check to plaintiff for $38,100.56, the estimated cost of repairs. In January 2004, plaintiff had the Sea Ray professionally repaired, and in June 2004 advised Safeco that the repairs had been completed but the Sea Ray's carpet could not be cleaned. Safeco issued a second check to plaintiff for $2,662.36 for carpet replacement. At some point in the spring or summer of 2004, plaintiff notified Safeco that he suspected there was mold on the boat. Plaintiff made several unsuccessful attempts to communicate with Safeco between November 2004 and February 2005. Plaintiff filed this action in state court on August 21, 2008.[1]

Plaintiff identified Thomas Wellington as an expert on the issue of mold contamination. In an initial report dated January 10, 2010, Mr. Wellington opined that mold is growing in the interstitial spaces between the hull of the boat and the interior cabin finishes as a result of the 2003 accident. In February 2010, Safeco's expert Roman Narconis, Jr. conducted a series of swab and air tests in the Sea Ray's cabin which showed high mold counts in the boat's interior, and Mr. Narconis located mold in several locations within the cabin and identified high mold counts in the cabin air. In April 2010, Mr. Wellington submitted a supplemental report which relied on the air quality and mold sample testing performed by Safeco's expert, reading and Internet research conducted by Mr. Wellington, and a 2009 water quality study for the Lake of the Ozarks.

In June 2010, the Court denied Safeco's motion to strike plaintiff's supplemental disclosures and ordered plaintiff to provide expert disclosures pursuant to Rule 26(a)(2), Federal Rules of Civil

---

[1] Safeco removed the action to this Court based on diversity of citizenship. See 28 U.S.C. § 1332(a).

Procedure, for witnesses Byron Gallina, Service Adviser with MarineMax East, Inc., and Pat Langelier, of Ship Shape LLC. (See Order, Doc. 42). Mr. Gallina and Mr. Langelier provided reports and testified concerning the cost and methods to perform the mold remediation called for by plaintiff's initial expert, Mr. Wellington. In response to the reports and testimony of Mr. Gallina and Mr. Langelier, Safeco identified Stephen Knox as a marine expert to testify to the same issues.

**Legal Standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999), aff'd, 528 U.S. 440 (2000). The Rule "favors admissibility if the testimony will assist the trier of fact." Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted). Nonetheless, "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Lauzon, 270 F.3d at 686 (citing Daubert, 509 U.S. at 592).

In Daubert, the United States Supreme Court interpreted Rule 702 to require district courts to be certain that expert evidence based on scientific, technical or other specialized knowledge is "not only relevant, but reliable." Daubert, 509 U.S. at 589. The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert at 592-93.

The Eighth Circuit has explained that proposed expert testimony must meet three criteria to be admissible under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . .
>
> The basis for the third prerequisite lies in the recent amendment of Rule 702, which adds the following language to the former rule: '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.' Fed. R. Evid. 702.

Lauzon, 270 F.3d at 686 (internal citations and punctuation omitted).

The Daubert decision lists several nonexclusive factors a court may examine in performing its "gatekeeper" role of screening expert testimony for relevance and reliability. These are: "(1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted." Lauzon, 270 F.3d at 686-87 (internal citations and punctuation omitted). Additional factors which have been developed in subsequent cases include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Id. (citations omitted). The Daubert list of factors is not exclusive, and does not function as a definitive "checklist or test." Daubert, 509 U.S. at 593-94. Instead, the trial court retains great flexibility in customizing the analysis to fit the facts of each case. See Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1083 (8th Cir. 1999).

**Discussion**

Plaintiff move for the exclusion of Mr. Knox's testimony on several grounds. Specifically, plaintiff argues that (1) Mr. Knox's testimony lacks an adequate factual basis, (2) Mr. Knox is not qualified to testify concerning mold, mold growth or mold remediation, and (3) Mr. Knox's testimony is not proper rebuttal of the testimony of plaintiff's experts Mr. Gallina and Mr. Langelier, but rather improperly contradicts the testimony of plaintiff's main expert Mr. Wellington and supports and modifies the testimony of Safeco's expert Mr. Narconis. The Court will address each argument.

**A. Factual Basis of Mr. Knox's Opinions**

Plaintiff contends that Mr. Knox's opinions about methods and costs for disassembly and reassembly of the Sea Ray are inadmissible because they are unsubstantiated assumptions based on hearsay. Plaintiff states that Mr. Knox has never seen the Sea Ray, but his report states he inspected a "sister boat" in Chester, Maryland. Based on that inspection, Mr. Knox opines that the Sea Ray's interior does not need to be disassembled to clean the areas behind the cabin walls, because "[a]lmost all of the cabinets are open at back, with the inside of the hull forming the back of the cabinet." Knox Report at 2. Knox also states that "[w]here areas are closed by trim, access panels are provided." Id. Knox opines that based on his inspection "of an exemplar boat, the insides of the cabinets and the inside of the hull itself can be cleaned by hand through the existing access panels. Some removable trim panels must be removed, but they are designed to be removable and would not be destroyed. It is not necessary to remove all the cabinets." Id.

Plaintiff argue that these statements and the opinions based thereon are inadmissible as unreliable under <u>Daubert</u> because they lack a factual foundation:

> Knox's theory that the "sister boat" is exactly the same as the Sea Ray has not been tested nor confirmed. Knox did not inspect the Sea Ray, did not obtain construction plans for the Sea Ray, and thus did not compare design plans for the Sea Ray with the boat that he actually inspected. He thus could not have confirmed that the interior of the Sea Ray is constructed in the same manner as the "sister boat." He did not confirm that the carpet, wiring, and cabinets within the Sea Ray match the boat that he inspected. Knox has not shown that his theory has been subjected to peer review or publication. He has not provided any publications or periodicals that compare the year and model of the "sister boat" with the year and model of the Sea Ray. Therefore, he cannot show whether his assumption that the "sister boat" is exactly the same as the Sea Ray has any potential rate of error, or whether his assumption is generally accepted in the relevant community. Knox has not reviewed any documents regarding possible repairs or modifications to the Sea Ray or possible repairs or modifications to the "sister boat." . . . If either boat has undergone repairs and/or modifications different from the other boat, then the boats cannot be considered the same or comparable for Knox's purposes.
>
> Knox's opinions are based on his unverified assumption that the "sister boat" he inspected is the same as the Sea Ray. Knox fails to provide any basis, other than hearsay, to support this assumption.

Pl.'s Mem. Supp. at 7.

Plaintiff also requests that if Knox's testimony is not excluded, he be allowed to supplement his experts' reports to address the new argument presented by Knox, specifically (1) whether and to what extent access panels exist in the Sea Ray, (2) whether any access panels are available to aid in remediation of the mold within the Sea Ray, and (3) whether and to what extent use of the access panels would have on the cost to undertake Wellington's remediation plan.

Safeco responds that through cross examination, plaintiff can query Mr. Knox regarding any possible dissimilarities between the boats that could undermine his opinions, and that plaintiff has provided no basis for his assertion that the boats may be dissimilar. Safeco asserts that Mr. Knox contacted the Sea Ray's manufacturer directly "to verify the materials and methods used in constructing the boat model at issue" and "further verified this information" by inspecting the "sister boat." Def.'s Opp. at 10. Safeco states that Mr. Knox provided ninety photographs of the sister boat

with his report and plaintiff has not identified any photographs which differ from the Sea Ray. Safeco cites the general rule that the "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination." Bonner v. ISP Techs., Inc., 259 F.3d 924, 930 (8th Cir. 2001).

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 356 F.3d 850, 858 (8th Cir. 2004) (quoted case omitted). Doubts regarding the admissibility of expert testimony should be resolved in favor of its admission. See Clark v. Heidrick, 150 F.3d 912, 914 (8th Cir. 1998). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (quoting Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995)); Archer Daniels Midland Co., 356 F.3d at 858 ("Generally, the factual basis of an expert's opinion goes to credibility of the testimony, not admissibility."). The Eighth Circuit Court of Appeals has instructed that "[a]n expert's opinion must be excluded only if it 'is so fundamentally unsupported that it can offer no assistance to the jury." Id. (quoted case omitted).

The Court believes that Mr. Knox's opinions verge on being fundamentally unsupported. The "facts" on which he relies for the proposition that the boat he examined is constructed in the same manner as the Sea Ray are actually inadmissible hearsay. The Court is mindful, however, of plaintiff's burden to examine the factual basis for Mr. Knox's opinions, Hose, 70 F.3d at 974, and, more importantly, of "the very nature of a trial as a search for truth." Nix v. Whiteside, 475 U.S. 157, 166 (1986). Here, the truth is either that the Sea Ray has access panels like the "sister boat"

7

and the cost of remediation should be well below that opined by plaintiff's experts, or the Sea Ray has a different construction than the "sister boat" and Mr. Knox's opinions are largely worthless. It is appropriate that this truth be uncovered through discovery rather than avoided or subverted by a pretrial evidentiary ruling.

As a result, the Court will grant plaintiff's alternative request for leave to supplement his experts' reports to address (1) whether and to what extent access panels exist in the Sea Ray, (2) whether any access panels are available to aid in remediation of the mold within the Sea Ray, and (3) whether and to what extent use of the access panels would have on the cost to undertake Wellington's remediation plan.

**B. Plaintiff's Challenge to Mr. Knox's Qualifications**

Other issues raised by plaintiff's motion to exclude Mr. Knox's testimony are not moot as a result of the Court's decision to allow further discovery in this matter. Plaintiff argues Safeco has failed to establish that Mr. Knox is qualified to testify regarding mold, mold growth, and mold remediation methods. Plaintiff states that Mr. Knox is a professional engineer who claims broad experience in boat survey, construction, design, and repair, but asserts that he lacks the knowledge, skill, experience, training or education concerning the causes of mold, mold growth or mold remediation and that certain opinions he offers are outside his area of expertise. Specifically, plaintiff challenges Mr. Knox's testimony as to: (1) whether the Sea Ray's storage conditions would cause mold to grow, (2) whether the mold within the Sea Ray can be completely cleaned, (3) whether mold growth would not have occurred had the alleged existing access panels been used and the Sea Ray dried and cleaned, (4) whether the mold within the Sea Ray can be cleaned by hand through the alleged existing access panels, and (5) whether mold exists on or is growing on the wires

8

within the Sea Ray. Plaintiff states that Safeco has already designated an expert, Mr. Narconis, to provide opinions on mold-related issues.

Safeco concedes that Mr. Knox is not trained in mold remediation or environmental sciences and states he will not testify on mold remediation, but rather will testify to rebut the opinions given by Mr. Gallina and Mr. Langelier on the method and cost to remediate the Sea Ray. Safeco contends that the testimony plaintiff objects to is actually proper rebuttal testimony and/or does not concern mold.

Because Safeco concedes that Mr. Knox is not qualified to testify regarding mold-related issues, the Court need not address the factors relevant to whether an expert is qualified to testify on a particular subject.

**C. Plaintiff's Other Challenges to Mr. Knox's Testimony**

The Court now examines plaintiff's specific challenges to six opinions contained in Mr. Knox's report.

> **a. "Under the storage conditions described by the boat owner, this boat would have grown mold between 2004 and the present whether it had been previously flooded or not."**

Plaintiff moves to exclude this testimony on the basis that Mr. Knox is not qualified by skill, experience, training or education concerning the causes of mold, mold growth or mold remediation and that this opinion is outside his area of expertise.

Although Safeco contends this opinion directly refutes the testimony of Mr. Langelier that the mold problem on the boat was not exacerbated by the closed conditions in which it was stored, this testimony clearly concerns factors relevant to mold growth, and therefore is outside Mr. Knox's area of expertise. This testimony will be excluded.

9

### b. "With the existing access panels, the interior of the boat can be completely dried and cleaned as proposed by Roman Narconis of Global Environmental Consultants."

Plaintiff contends that Mr. Knox's testimony is not proper rebuttal because it does not rebut the opinions of Mr. Langelier and Mr. Gallina regarding the cost to disassemble and reassemble the Sea Ray and to clean and remove the mold from it. Instead, plaintiff asserts that Mr. Knox actually seeks to rebut the testimony of plaintiff's expert Mr. Wellington, who opined that the Sea Ray must be disassembled to be properly cleaned. Plaintiff notes that the remediation plan of Safeco's initial rebuttal expert, Mr. Narconis, did not call for the use of access panels.

Plaintiff argues that through the Knox report, Safeco has presented new arguments that essentially modify and support its original expert's remediation plan in the guise of rebutting cost-of-repair estimates. Plaintiff states that courts have held rebuttal experts may not present new arguments, citing Trowbridge v. United States, 2009 WL 1813767, at *11 (D. Idaho June 25, 2009). Plaintiff also cites Morgan v. Commercial Union Assurance Cos., 606 F.2d 554, 556 (5th Cir. 1979) ("[A] defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one.").

Safeco responds that plaintiff's experts Mr. Gallina and Mr. Langelier testified the boat's interior must be stripped in order to access all spaces necessary to thoroughly dry the boat, and that Mr. Knox provides a contrary opinion that those spaces can be reached through access panels. Safeco contends that Mr. Knox's opinions do not address the appropriateness of the competing methodologies proposed by the primary experts, Mr. Wellington and Mr. Narconis, but rather "offer technical expertise as to how those differing methodologies are impacted by the structure of this particular boat." Def.'s Opp. at 7.

Safeco states that Rule 26(a)(2)(C) requires rebuttal expert testimony to address the "same subject matter" identified by the initial expert. Safeco asserts that courts have held the phrase "same subject matter" should not be narrowly construed to limit a rebuttal expert to the same methodology as the other expert, but rather more broadly to permit independent opinions on the same subject matter, citing TC Systems Inc. v. Town of Colonie, N.Y., 213 F.Supp.2d 171, 180 (N.D.N.Y. 2002). Safeco also asserts that proper rebuttal includes questioning experts' assumptions and methods, citing Laflamme v. Safeway, Inc., 2010 WL 3522378, at * 3 (D. Nev. Sept. 2, 2010), which here includes the need to disassemble the interior of the boat. Safeco states it is "only when the rebuttal opinions go into new facts or opinions that the expert has exceeded the scope of rebuttal." Def.'s Opp. at 6 (citing Laflamme, id.).

Neither party has cited any Eighth Circuit precedent on the proper scope of rebuttal expert testimony. The Eighth Circuit has explained that the "function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party." United States v. Luschen, 614 F.2d 1164, 1170 (8th Cir. 1980) (cited case omitted). With respect to the scope of rebuttal, the Eighth Circuit has stated, "The fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal." Id. (cited case omitted). In Luschen, the Eighth Circuit held it was not error to permit the government to conduct additional tests after concluding its case in chief and to present the results as rebuttal evidence, finding the new tests served the permissible rebuttal function of counteracting the testimony of the opposing expert witness. Id. at 1170-71. The Eighth Circuit has quoted Luschen and applied its teachings in a civil case, Everett v. S.H. Parks and Associates, Inc., 697 F.2d 250, 252 (8th Cir. 1983).

11

Here, both Mr. Gallina's and Mr. Langelier's reports, relying on the initial report of Mr. Wellington, assume that disassembly of the boat's interior is required and base their repair cost estimates on that assumption. For example, Mr. Gallina's report states in part that to carry out the Wellington remediation plan, upper and lower galley cabinets must be removed, the cabinets will be destroyed in the removal process, and replacements must be custom built. Mr. Knox's report directly rebuts this testimony to the extent he asserts that cabinets and trim do not have to be removed and replaced, because the Sea Ray has access panels in the cabinets and removable trim pieces that can be reused. Although Mr. Knox did not offer cost estimates, it would seem the cost of remediation would be significantly reduced if the cabinets and trim can be reused following remediation.[2]

Mr. Knox's testimony does offer new facts and evidence with respect to cabinet access panels and removable trim, and tends to rebut the Wellington report because Mr. Wellington stated the cabinets and trim would have to be removed in order to carry out proper remediation. It is unclear whether, as plaintiff argues, Safeco intends the Knox report to modify Mr. Narconis's

---

[2]Mr. Gallina estimated the cost for parts and labor associated with removal and replacement of the galley cabinets as $22,420.00. There may be other aspects of Mr. Gallina's report that are affected by Mr. Knox's opinions. For example, Mr. Gallina calls for the removal and custom replacement of galley counters at an estimated cost of $18,440. Safeco has not provided the Court with specific facts or arguments concerning how Mr. Knox's report purports to rebut the reports of plaintiff's experts with respect to either the cost or method of remediation. For example, Mr. Langelier's report states in part he "would remove any panels and trim within the cabin that are capable of being removed and reused; I would then fog and manually clean the panels and trim, and then store those items." Langelier Report at 1, Pl.'s Ex. 2. Mr. Langelier's report does not discuss removing cabinets, but states that the Sea Ray's cabin would be "disassembled" by MarineMax, Mr. Langelier would then fog and manually clean the interior of the cabin and perform other remediation work, and after all visible mold was cleaned, disinfected and removed, MarineMax would reassemble the cabin. Id. Mr. Knox's report does not indicate what aspects of Mr. Langelier's report might change if access panels are used and the interior panels and trim do not need to be removed.

12

opinions, and now asserts that injection of dry air and fungicide fog will be effective to remediate mold in the Sea Ray if the access panels are removed. Language in the Knox report could lead to this conclusion, as it states that "with the existing access panels, the interior of the boat can be completely dried and cleaned as proposed by Roman Narconis of Global Environmental Consultants." Knox Report at 4.

It does not appear the Knox testimony is improper for these reasons, however, based on the Eighth Circuit's holding in Luschen concerning the scope of rebuttal testimony. The Court will not make a definitive ruling on the issue at this time because Mr. Knox's challenged opinion is based on examination of an exemplar boat that may or may not be the same as the Sea Ray, and additional discovery to resolve this crucial fact issue has been ordered. The Court will deny plaintiff's motion to exclude this evidence without prejudice, pending further discovery to determine if the Sea Ray has access panels. If necessary, plaintiff may file a new motion to exclude this evidence and should cite therein, to the extent possible, relevant Eighth Circuit authority in support of his position.

### c. "Had the boat been dried immediately following the accident using the techniques recommended by Narconis, accelerated mold growth would not have occurred as a result of the flooding."

Safeco stipulates that Mr. Knox will not give an opinion on this issue. Plaintiff's motion to exclude this evidence should therefore be denied as moot.

> **d. "The insides of the cabinets and the inside of the hull itself can be cleaned by hand through the existing access panels as recommended by Thom Wellington of Wellington Environmental. Such cleaning would not require dismantling the interior."**

Plaintiff argues this is not proper rebuttal testimony, as it is intended to contradict Mr. Wellington's report. Safeco responds that this opinion rebuts Mr. Gallina and Mr. Langelier's conclusions that the interstitial space of the Sea Ray can only be accessed by disassembling the cabin. The Court will deny plaintiff's motion to exclude this evidence without prejudice because of the factual uncertainty underlying Mr. Knox's report as discussed above. If necessary, plaintiff may file a new motion to exclude this evidence following the completion of additional discovery.

> **e. "It is unlikely there is mold growing on or among the wire runs in the boat."**

Plaintiff moves to exclude this testimony on the basis that Mr. Knox is not qualified by skill, experience, training or education concerning the causes of mold, mold growth or mold remediation and that this opinion is outside his area of expertise.

Safeco states that Mr. Knox's opinion is not based on expertise in mold issues, but rather is based on his knowledge that the boat's wiring runs overhead and would not have been in contact with lake water. Safeco also asserts that his opinion goes directly to the cost of repair, because if the wires could not have come into contact with water, then they are not likely to be contaminated. Safeco also asserts that this opinion is consistent with Mr. Wellington's opinions about what portions of the boat are likely growing mold and whether those portions of the boat need to be accessed and cleaned.[3]

---

[3]The Gallina and Langelier reports do not mention any costs specifically associated with replacement or cleaning of electrical wiring or wire runs. The Langelier report states generally that he would "fog, disinfect and manually clean the entire interior of the Sea Ray's cabin."

14

The Court will grant plaintiff's motion to exclude this aspect of Mr. Knox's testimony because he lacks the qualifications to testify concerning conditions conducive to mold growth. Mr. Knox may testify as to the likelihood the Sea Ray's electrical wiring runs became wet when the boat took on water in the accident. As with other aspects of Mr. Knox's report, this testimony could lack a factual foundation if the electrical wiring runs of the "sister boat" he inspected are not constructed in the same manner as those of the Sea Ray.

### f. "There is no exposed wood in the boat to provide nutrients for mold growth, or to hinder successful surface cleaning."

Plaintiff argues this testimony lacks a factual foundation because it is based on Mr. Knox's examination of the "sister boat," which may not be the same as the Sea Ray, and that Mr. Knox lacks the qualifications to testify concerning mold growth.

Safeco responds that this opinion is a direct response to the cleaning cost opinions of Mr. Gallina and Mr. Langelier, who relied on Mr. Wellington's assumption that exposed wood in the Sea Ray provided nutrients for mold growth. Safeco states that in calculating costs of repair, plaintiff's experts included costs to remove all materials necessary in order to access the interior space where there was allegedly exposed wood, and Mr. Knox has verified that the Sea Ray contains no exposed wood that would need to be accessed.

The Court will grant plaintiff's motion to exclude this aspect of Mr. Knox's testimony because he lacks the qualifications to testify concerning conditions conducive to mold growth. Mr. Knox may testify that there is no exposed wood in the Sea Ray. As previously stated, this testimony may lack a factual foundation if the "sister boat" he inspected was not constructed in the same manner as the Sea Ray. The Court notes that Mr. Gallina testified some Sea Ray boats were constructed with wood frames and some were not. See Gallina Dep. at 14.

**Conclusion**

For the foregoing reasons, plaintiff's motion to exclude the testimony of defendant's expert Stephen A. Knox will be granted in part, denied in part as moot, and denied in part without prejudice as discussed herein.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to preclude the testimony of defendant's expert witness Stephen A. Knox is **GRANTED in part**, **DENIED in part as moot**, and **DENIED in part without prejudice**, as follows: [Doc. 57]

> The motion is **GRANTED** as to Mr. Knox's testimony (1) that the Sea Ray would have grown mold between 2004 and the present because of storage conditions, whether it had been flooded or not, (2) that it is unlikely there is mold growing on the Sea Ray's wire runs, and (3) concerning mold growth on any exposed wood in the Sea Ray.
>
> The motion is **DENIED as moot** as to Mr. Knox's testimony that if the Sea Ray had been properly dried following the accident accelerated mold growth would not have occurred, as Mr. Knox will not offer such testimony.
>
> The motion is **DENIED without prejudice** as to Mr. Knox's testimony that: (1) through existing access panels, the Sea Ray's interior can be completely cleaned and dried as proposed by Mr. Narconis, and (2) through existing access panels, the insides of the cabinets and hull can be cleaned by hand, as recommended by Mr. Wellington, without dismantling the interior.

**IT IS FURTHER ORDERED** that plaintiff is granted leave to supplement his experts' reports to address (1) whether and to what extent access panels exist in the Sea Ray boat, (2) whether any access panels are available to aid in remediation of the mold within the Sea Ray, and (3) whether and to what extent use of the access panels would have on the cost to undertake Wellington's remediation plan.

**IT IS FURTHER ORDERED** that parties shall confer and submit a proposed modification to the Case Management Order to incorporate dates for the supplemental expert discovery, within five (5) days of the date of this Order.

                                                                               **CHARLES A. SHAW**
                                                                                **UNITED STATES DISTRICT JUDGE**

Dated this  6th  day of December, 2010.